UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZYNGA GAME NETWORK, INC., | No. C-09-3636 SC (EMC) |
| Plaintiff, | |
| v. | **ORDER RE LETTERS OF OCTOBER 13 AND 14, 2010** |
| GREEN PATCH, INC., | **(Docket Nos. 131, 132, 135)** |
| Defendant. | |

The parties have submitted three letters regarding discovery disputes, dated October 13 and 14, 2010. *See* Docket Nos. 131, 132, 135. After the submission of the letters, Court staff facilitated a further meet and confer regarding the discovery disputes. That meet and confer resulted in agreement as to some of the disputes. This order memorializes the agreements that were made and provides additional guidance and/or rulings where necessary.

A. Zynga's Motion to Compel

    1. Documents Required by Court's Order of September 22

Zynga agreed to provide a list of the specific repositories or sources that it asserts should have been searched with respect to the documents covered by the Court's order of September 22. Green Patch agreed to provide a declaration certifying that the repositories or sources have been searched. Green Patch also agreed to certify in the declaration that the production required by the Court's order of September 22 has been completed. Finally, Green Patch agreed to provide its best estimate as to when it would complete its document production unrelated to the September 22 order.

///

2. RFPs Nos. 160-62

With respect to these document requests, Zynga explained, during the Court-facilitated meet and confer, that it has concerns about Green Patch's contention that no responsive documents "presently" exist. More specifically, Zynga has concerns that the information it seeks is maintained on Green Patch databases and that such information could easily be obtained by, *e.g.*, running a search on the databases. The parties agreed to meet and confer further to discuss Green Patch's databases (including, *e.g.*, what information is maintained on the databases) to determine whether additional information should be produced. The parties shall report back on this issue by **October 20, 2010**.

3. Privilege Log

Zynga agreed to refer Green Patch to representative document requests, with respect to Zynga's concern that responsive documents have been withheld on the basis of privilege. Green Patch agreed to provide a privilege log as to *any* documents withheld on the basis of privilege.

B. Green Patch's Motion to Compel

1. Withholding of Documents

Simply because search terms were used to look for responsive documents does not mean that Zynga was therefore precluded from reviewing the results of the search to determine whether any irrelevant documents were included. However, to address Green Patch's concern that Zynga's assessment of relevance may not have been appropriate, Zynga agreed to give Green Patch examples of the kinds of documents that were excluded on the basis of lack of relevance. In addition, Green Patch agreed to identify for Zynga specific requests where Green Patch had concerns about information being withheld.

2. Software Code

Zynga has produced the front-end (*i.e.*, publicly available) source code that was copied by Green Patch. Green Patch contends that it is entitled to the entirety of the source code covered by the copyright registrations at issue – not just the portion that was copied – and for both front end and back end. According to Zynga, the information is both irrelevant and confidential.

1    Any confidentiality concerns may be addressed by a protective order that limits viewing of
2 the back-end code to attorney's and expert's eyes only (*i.e.*, no viewing by Green Patch).  Therefore,
3 the issue here is whether the source code sought by Green Patch is relevant.

4    According to Green Patch, the information is relevant to, *e.g.*, the validity of the copyrights,
5 the originality of the copyrighted works, and the de minimis nature of any copying.  Green Patch
6 also argued that the information is relevant given Zynga's representation, during the Court-
7 facilitated meet and confer, that the front-end code and back-end code work together.

8    Given Zynga's representation that the front-end and back-end code work together, the Court
9 is not convinced that the source code in its entirety is, as Zynga asserts, irrelevant.  Moreover, the
10 source code in its entirety is relevant given Green Patch's affirmative defense that any copying was
11 de minimis.  *See, e.g.*, 4-13 Nimmer on Copyright § 13.03[2][a] ("[S]uppose the similarity, although
12 literal, is not comprehensive – that is, the fundamental substance, or skeleton or overall scheme, of
13 the plaintiff's work has not been copied; no more than a line, or a paragraph, or a page or chapter of
14 the copyrighted work has been appropriated.  At what point does such fragmented similarity become
15 substantial so as to constitute the borrowing an infringement?").  Accordingly, the Court need not
16 address the merits of Green Patch's argument that the entirety of the code is relevant because, if a
17 noncopied portion of the code is invalid, the entire copyright is invalid (thus rendering any copying
18 of the front-end code moot).

19    3.    <u>MyMiniLife Copyright Registration</u>

20    Zynga agreed to provide to Green Patch the copyright registration for MyMiniLife.

21    4.    <u>30(b)(6) on Statutory Damages</u>

22    On September 3, 2010, Green Patch served a 30(b)(6) deposition notice on Zynga.  One of
23 the deposition topics was Zynga's damages as alleged in the first amended complaint.  Zynga
24 objected to the topic based on, *inter alia*, overbreadth and stated that it would not designate a
25 witness because the topic called for expert testimony.

26    Green Patch argues that the topic does not call for expert testimony because one of the
27 categories of damages requested by Zynga is statutory damages and the value of the copyrighted
28 work may be considered in determining what is an appropriate statutory damages award.  *See, e.g.*,

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (stating that one factor to consider in determining an appropriate statutory damages award is the value of the copyrighted work); *Quinto v. Legal Times of Wash., Inc.*, 511 F. Supp. 579, 582 (D.D.C. 1981) (awarding statutory damages of $250 based on "the fair market value of plaintiff's article and the amount defendants saved by copying plaintiff's article rather than writing their own"). During the Court-facilitated meet and confer, Zynga stated that it could not, at this juncture, say it would not present any evidence about the value of its copyrighted works in support of its claim for statutory damages.

Because Zynga may produce evidence about the value of its copyrighted works in support of its claim for statutory damages, it is fair for Green Patch to depose a 30(b)(6) witness on that subject. In so ruling, the Court takes into account Zynga's argument that Green Patch did not raise this specific theory of relevance until late in the day. While the Court is not unsympathetic to Zynga's argument, it cannot say that Green Patch should be deprived of the opportunity to explore evidence that may be critical to its defense, particularly when its deposition topic as originally framed was broad enough to cover the specific relevance theory now presented. Of course, if Zynga agrees not to present any evidence about the value of its copyrighted works in support of its claim for statutory damages, then it need not provide a witness.

The parties shall meet and confer about a reasonable date and time for the deposition. The deposition shall be limited in subject matter to the value of the copyrighted works and shall last no longer than three (3) hours.

This order disposes of Docket Nos. 131, 132, and 135.

IT IS SO ORDERED.

Dated: October 15, 2010

EDWARD M. CHEN
United States Magistrate Judge

4