**United States District Court**
For the Northern District of California

1

2

3

4                 IN THE UNITED STATES DISTRICT COURT

5             FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7  ZYNGA GAME NETWORK INC.,              ) Case No. 09-3636 SC
                                         )
8            Plaintiff,                  ) ORDER DENYING PLAINTIFF'S
                                         ) MOTION FOR PARTIAL SUMMARY
9       v.                               ) JUDGMENT, DENYING
                                         ) DEFENDANT'S RULE 56(f)
10 GREEN PATCH, INC.,                    ) MOTION, AND DENYING
                                         ) PLAINTIFF'S MOTION TO
11           Defendant.                  ) STRIKE
                                         )
12 _____      )
                                         )
13                                       )

14

15 **I.    INTRODUCTION**

16      This is a case about copying of computer source code by

17 Defendant Green Patch, Inc. ("Defendant" or "Green Patch").

18 Plaintiff Zynga Game Network Inc. ("Plaintiff" or "Zynga") claims

19 that Green Patch copied code from Zynga's games FarmVille, Mafia

20 Wars, Fashion Wars and Texas HoldEm Poker, and used that code when

21 developing its competing games (Lil) Farm Life, Mafioso,

22 Fashionista and Poker Planet.

23      Now before the Court is a Motion for Partial Summary Judgment

24 filed by Zynga.  ECF No. 111.  In response, Green Patch filed an

25 Opposition, ECF No. 137, and a Rule 56(f) Motion to Deny and/or

26 Continue, ECF No. 142.  Zynga filed a Reply, ECF No. 158, and an

27 Opposition to the Rule 56(f) Motion, ECF No. 159.  Zynga also filed

28 a Motion to Strike.  ECF No. 160.  Having considered these papers,

United States District Court
For the Northern District of California

and all supporting documentation, and for the reasons stated herein, the Court DENIES Plaintiff's Motion for Partial Summary Judgment, DENIES Defendant's Rule 56(f) Motion, and DENIES Plaintiff's Motion to Strike.

## II.  **BACKGROUND**

Zynga makes social videogames played by Internet users. Skaggs Decl. ¶ 3.[1]  Zynga's games are played on social network web sites such as Facebook.  Id.  Zynga has registered five copyrights associated with four of its games: FarmVille, Mafia Wars, Fashion Wars and Texas HoldEm Poker.  See Gross Decl. Ex. 1 ("FarmVille HTML Software Certificate of Registration (TX 6-960-171)"); Ex 2 ("FarmVille Certificate of Registration (TXu 1-610-517)"); Ex. 3 ("Fashion Wars Certificate of Registration (TXu 1-611-882)"), Ex. 4 ("Texas HoldEm Poker Certificate of Registration (TXu 1-611-885)"); Ex. 5 ("Mafia Wars Certificate of Registration (TXu 1-372-824)").[2]

Zynga first made FarmVille available to users on the Internet on June 19, 2009.  ECF No. 1 ("Compl.") ¶ 13; ECF No. 11 ("FAC") ¶ 13; Rajlich Decl. ¶ 9.[3]  Green Patch published (Lil) Farm Life on or about July 31, 2009.  ECF No. 27 ("Answer to FAC") ¶ 12.  On August 3, 2009, Zynga employees discovered some Zynga code in Green

---

[1] Mark Skaggs ("Skaggs"), the Vice President and General Manager of the Social Real Time Strategy group within Zynga, filed a declaration in this case.  ECF No. 16.

[2] Gabriel S. Gross ("Gross"), counsel for Zynga, filed a declaration in support of the Motion for Partial Summary Judgment. ECF No. 112.

[3] Luke Rajlich ("Rajlich"), Chief Technical Officer ("CTO") for FarmVille, filed a declaration in support of Plaintiff's Motion for Partial Summary Judgment.  ECF No. 113.

Patch's game (Lil) Farm Life.  Kim Decl. Ex. 4 ("Rajlich Dep.") at 234:13-235:12.[4]  On August 6, 2009, Zynga sent a take-down notice to Green Patch's internet service provider ("ISP").  Id. Ex. 5 ("Notice and Take Down Request").  It states that "[o]ur review of the (Lil) Farm Life publicly viewable code has identified multiple cases of verbatim copying of Zynga's FarmVille code, including code from the style sheets that control how the game is displayed."  Id. In response to the take-down request, Green Patch "reviewed the publically available 'CSS' code for Zynga's four games at issue and compared such code to Green Patch's own 'CSS' code for *(Lil) Farm Life*, *Mafioso, Fashionista,* and *Poker Planet*.  Any Green Patch code that appeared to be 'copied' . . . from any of Zynga's . . . was deleted from Green Patch's code."  Id. Ex. 3 ("Green Patch Resp. to Interrog. No. 7"); see also id. Ex. 6 ("Counter-Notification") (italics in original).

Green Patch's Director of Operations, Brian Lynch ("Lynch"), admitted that he copied Zynga code without permission or a license from Zynga to do so.  Gross Decl. Ex. 9 ("Lynch Dep.") at 82:2-17, 112:6-18.  Lynch copied code from FarmVille for use in Green Patch's game, (Lil) Farm Life, and he also copied Zynga code for use in Mafioso and Poker Planet.  Id. at 117: 10-19, 126:5-22. Lynch viewed the code on a publicly available page and then blocked and copied it for use in his development of Green Patch's games. Id. at 157:5-13, 164:5-15.  Lynch estimates that he copied 60 to 70 lines of CSS code, and approximately 100 lines of HTML code for use

---

[4] Miriam Kim ("Kim"), counsel for Green Patch, filed a declaration in Opposition to the Motion for Partial Summary Judgment.  ECF No 140.  Only the rough transcript of the Rajlich deposition was available at the time Green Patch filed its opposition papers.

United States District Court
For the Northern District of California

in (Lil) Farm Life.  <u>Id.</u> at 126:5-22.  Lynch's copying saved Green

Patch at least two days of work.  <u>Id.</u> at 167:18-23.

Green Patch's co-founder, Ashish Dixit ("Dixit"), testified

that Zynga code was found in four pages of code for (Lil) Farm

Life: a guest page, a select-your-friends page, a neighbor page,

and a help page.  <u>Id.</u> Ex. 8 ("Dixit Dep.") at 27:3-28:2.  Code from

the bookmark page of Zynga's poker-themed game was used in Green

Patch's Poker Planet.  <u>Id.</u> at 37:21-38:5, 44:13-18.  There were

three instances of code from Zynga's Mafia Wars found in Green

Patch's game, Mafioso.  <u>Id.</u> at 40:17-21, 45:5-10.  Dixit also

testified to three instances of copying found in Green Patch's

Fashionista game.  <u>Id.</u> at 43:14-20.

"Green Patch admits that Lynch copied a small portion of

computer code from the *FarmVille* application that was viewable

through a web based browser when the viewer right clicked on the

web page and selected 'View Source.'"  Gross Decl. Ex. 7 ("Def.'s

Supp. Resp. to Pl.'s RFA No. 2") (italics in original).  Green

Patch admits that Lynch "knew he was copying computer code that

Green Patch did not own."  <u>Id.</u> Ex. 7 ("Def.'s Supp. Resp. to Pl.'s

RFA No. 4").  Green Patch admits that Lynch "knew he had not asked

for permission to copy that computer code."  <u>Id.</u> Ex. 7 ("Def.'s

Supp. Resp. to Pl.'s RFA No. 5").  Similarly, Green Patch admits

that Lynch copied a small portion of code from Texas HoldEm Poker

and Mafia Wars.  <u>Id.</u> Ex. 7 ("Def.'s Supp. Resp. to Pl.'s RFA No.

8"), ("Def.'s Supp. Resp. to Pl.'s RFA No. 13"), ("Def.'s Supp.

Resp. to Pl.'s RFA No. 16").  Zynga code also appeared in two other

Green Patch games.  <u>Id.</u> Ex. 6 ("David King Dep.") at 176:12-178:9.

**United States District Court**
For the Northern District of California

### III. <u>LEGAL STANDARD</u>

"The standards and procedures for granting partial summary judgment, also known as summary adjudication, are the same as those for summary judgment." <u>Mora v. Chem-Tronics, Inc.,</u> 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  Summary judgment must be granted under Federal Rule of Civil Procedure 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact.  <u>Giles v. General Motors Acceptance Corp.,</u> 494 F.3d 865, 872 (9th Cir. 2007).  A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

### IV. <u>DISCUSSION</u>

#### A.   <u>Zynga's Motion to Strike</u>

Zynga moves to strike portions of the Declaration of Dr. John P.J. Kelly ("Kelly") filed in support of Green Patch's Opposition. ECF No. 141 ("Kelly Expert Report").  Zynga contends that Kelly's opinions do not rebut the opinions of its own expert, Robert Zeidman ("Zeidman"), but instead present new theories about ownership, originality, and copyrightability of the code that Green Patch copied.  <u>See</u> Mot. to Strike. at 4-5.  Zynga moves to strike paragraph 11 and paragraphs 15 to 28 of the Kelly Expert Report.

**United States District Court**
For the Northern District of California

In his expert report, Zeidman compares Zynga code and Green Patch code.  Zeidman Decl. Ex 1 ("Zeidman Expert Report").[5]  As part of his source code correlation, he filtered out "similarities based upon third-party source code, code generation tools, common identifier names, common algorithms, and common authors."  Id. ¶¶ 41, 44-57.  For example, Zeidman eliminated from his comparison libraries of ActionScript code provided by Adobe.  Id. ¶ 44. Zeidman notes that his filtering process is consistent with the process known in legal terms as the "abstraction-filtration-comparison" test.  Id. ¶ 26.  This test is used to "to sift out all non-protectable material" in order to "determine whether the protectable elements of the programs at issue are substantially similar so as to warrant a finding of infringement." Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 706 (2d Cir. 1992).

After engaging in this filtration process, Zeidman presents examples of correlations between Zynga's code and Green Patch's code that he concludes can only be explained as the result of copying.  Zeidman Expert Report ¶¶ 58-86.  Having filtered out non-protectable elements, Zeidman is therefore at least implicitly assuming that the Zynga code in his correlation examples constitutes original, protectable expression.  In response, Green Patch is entitled to offer rebuttal evidence challenging this assumption.  Zynga's Motion to Strike is DENIED because the Kelly

---

[5] Robert Zeidman, founder and president of Zeidman Consulting, and one of Plaintiff's retained experts, filed a declaration in support of Plaintiff's Motion for Partial Summary Judgment.  ECF No. 116.

**United States District Court**
For the Northern District of California

1   Expert Report offers rebuttal evidence.[6]

2       **B.   Green Patch's Rule 56(f) Motion**

3       As well as filing an opposition to Zynga's Motion for Partial

4   Summary Judgment, Green Patch also filed a Rule 56(f) Motion to

5   Deny and/or Continue Plaintiff's Motion for Partial Summary

6   Judgment.  ECF No. 142.  Zynga opposes the motion as procedurally

7   improper.  ECF No. 159.

8       The Court agrees with Zynga.  Rule 56(f) states that "[i]f a

9   party opposing the motion [for summary judgment] shows by affidavit

10  that, for specified reasons, it cannot present facts essential to

11  justify its opposition, the court may: (1) deny the motion; (2)

12  order a continuance . . . ."  Fed. R. Civ. P. 56(f).  Green Patch

13  did not submit a Rule 56(f) affidavit as part of its opposition to

14  Zynga's motion, but instead filed a separate motion to deny and/or

15  continue.  This approach is procedurally improper.  As well as not

16  complying with the text of the federal rules, it also permits Green

17  Patch to circumvent the page limits set by Civil Local Rule 7-4(b).

18  Therefore, the Court DENIES Green Patch's Rule 56(f) Motion to Deny

19  and/or Continue.

20      **C.   Copyright Infringement**

21      The two elements that a plaintiff must prove to establish

22  copyright infringement are: "(1) ownership of a valid copyright,

23  and (2) copying of constituent elements of the work that are

24  original."  Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.

25  499 U.S. 340, 361 (1991).  "Copying" is shorthand for the various

26  activities that infringe "any of the copyright owner's . . .

27  ────────────────────

28  [6] At trial, however, Kelly's testimony will be limited to rebutting
    Zeidman's opinions, and Kelly will not be permitted to offer
    opinions that go beyond those presented in his report.

exclusive rights described at 17 U.S.C. § 106." S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 n.3 (9th Cir. 1989).  These exclusive rights include the right to reproduce, distribute, and make derivative works.  17 U.S.C. § 106(1)-(3).

While copying is usually established by proof of access and substantial similarity, this case is one of those rare cases where there is direct evidence of copying.  See, e.g., Broderbund Software, Inc. v. Unison World, Inc., 648 F. Supp. 1127, 1135 (N.D. Cal. 1986) (finding direct evidence of copying where programmers carried out orders to copy plaintiff's program).  Green Patch admits that its employee, Lynch, copied some of the publicly visible code for Zynga's games.  See Part II, supra.

However, in its Motion for Partial Summary Judgment, Zynga has not shown the Court that the code Lynch copied constitutes original, protectable expression.  Zynga relies on its copyright registrations as prima facie evidence of originality.  See Johnson Controls, Inc. v. Phoenix Control Systems, Inc. 886 F.2d 1173, 1175 (copyright registration is prima facie evidence of originality).  Zynga contends that Green Patch cannot rebut this presumption of originality because Green Patch produced no expert report contesting the originality of Zynga's code.  Mot. for Partial Summary J. at 12-13.  However, as explained below, the Court finds that the Kelly Expert Report calls into question the originality of at least some of the code at issue in this case, and there is also deposition testimony that not all of Zynga's code is original. This evidence is sufficient to rebut the presumption of originality created by the copyright registrations.

Instead of analyzing the code that Lynch admits to copying to

show that it is original, Zynga presents the Court with "independent circumstantial evidence that Green Patch copied Zynga's software code" in the form of Zeidman's Expert Report. Mot. for Partial Summary J. at 7.  This report is presented as corroborating Green Patch's admissions of copying.  Id.

Zeidman presents specific examples of correlations between Zynga code and Green Patch code.  See Zeidman Expert Report ¶¶ 60-85.  A number of Zynga employees declare that the Zynga code in these examples is original code written by Zynga developers. Rajlich Decl. ¶¶ 10-11, Craine Decl. ¶¶ 8-9; Vanbragt Decl. ¶¶ 9-10.[7]  Some of Zeidman's examples of copying are convincing.  For example, Zeidman identifies code from Green Patch's Fashionista game that retrieves an image file from Zynga's servers.  Zeidman Expert Report ¶¶ 73-74.  What is not clear, however, is whether these segments of code are the ones that Lynch admits to having copied.  Without an analysis of the specific code copied by Lynch, the Court has no basis for concluding at the summary judgment stage that the code Lynch copied constitutes protected, original expression.  This issue of fact precludes summary judgment of copyright infringement in Zynga's favor with respect to the specific code that Green Patch admits Lynch copied from Zynga.

To the extent that Zynga relies, in the alternative, on the Zeidman Expert Report as circumstantial evidence of copying, there are also disputes of fact that preclude a determination at the summary judgment stage that Green Patch engaged in copyright

---

[7] Erik Vanbragt ("Vanbragt"), Acting Chief Technology Officer at Zynga, filed a declaration in support of Plaintiff's Motion for Partial Summary Judgment.  ECF No. 114.  Darren Craine ("Craine"), Lead Software Engineer at Zygna, also filed a declaration.  ECF No. 115.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

infringement.  For example, in his expert report, Kelly contends that most of the Zynga comments and code in Figure 2 of Zeidman's Expert Report are not creative or original because they relate to a standard Facebook Application Programming Interface ("API").  Kelly Expert Report ¶¶ 15-22.  Kelly also calls into question whether some of the other correlations identified by Zeidman consist of original expression.  Id. ¶¶ 23-29.  There is evidence that at least four lines of copied code come from the MyMiniLife software, code that is explicitly excluded from the FarmVille HTML software copyright registration.  Rajlich Dep. at 228:15-229:23.  There is evidence that Zynga engineers used code from Facebook's license library in developing the code for FarmVille.  Id. at 169:18-172:21.  In light of material issues of this kind concerning the originality of Zynga's code, the Court finds that the most appropriate course of conduct is to proceed to trial on the question of whether Green Patch infringed Zynga's copyrights.

**D.   Statutory Damages and Attorneys' Fees**

Zynga also moves for partial summary judgment establishing its entitlement to statutory damages and attorneys' fees.  Mot. at 22. Section 504 of the Copyright Act of 1976 provides two methods for determining damage awards.  First, a plaintiff may prove actual damages and any profits of the infringer that are attributable to the infringement.  17 U.S.C. § 504(b).  Second, copyright plaintiffs may elect to receive statutory damages.  Id. § 504(c). "[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  Id. § 505.  However, statutory damages and attorneys' fees are not available for:

(1)  any  infringement  of  copyright  in  an

**United States District Court**
For the Northern District of California

> unpublished work commenced before the effective
> date of its registration; or (2) any
> infringement of copyright commenced after first
> publication of the work and before the
> effective date of its registration, unless such
> registration is made within three months after
> the first publication of the work.

Id. § 412.

Here, Zynga published FarmVille on June 19, 2009.  Compl.
¶ 13; FAC ¶ 13; Rajlich Decl. ¶ 9.  Green Patch's game, (Lil) Farm
Life, was published on or about July 31, 2009.  Answer to FAC ¶ 12.
Zynga registered its FarmVille computer program with the United
States Copyright Office on August 6, 2009 as an unpublished work.
See FarmVille Certificate of Registration (TXu 1-610-517").  Zynga
filed suit against Green Patch for copyright infringement on August
7, 2009.  See Compl.  Three days later, on August 10, 2009, Zynga
registered the FarmVille HTML software as a published work with
June 20, 2009 as the date of first publication.  See FarmVille HTML
Software Certificate of Registration (TX 6-960-171).  Zynga
excluded the computer program "Original MyMiniLife HTML Software"
from this copyright claim.  See id.  The Court has questions
concerning the validity of the FarmVille HTML software copyright
registration.  If this registration is not valid, then Zynga would
not be entitled to statutory damages and attorneys' fees.

Zynga does not claim to be eligible for statutory damages and
attorneys' fees in relation to the FarmVille computer program.
This work is an unpublished work, and the alleged infringement of
this work occurred before the effective date of its registration.
(Lil) Farm Life was launched on or about July 31, 2009, Zynga
engineers complained about copying of their code on August 3, 2009,

11

United States District Court
For the Northern District of California

1  and the FarmVille computer program was registered on August 6,

2  2009.  As such, 17 U.S.C. § 412(1) bars recovery of statutory

3  damages and attorneys' fees for infringement of the FarmVille

4  computer program.  See Derek Andrew, Inc. v. Poof Apparel Corp.,

5  528 F.3d 696, 702 (9th Cir. 2008) (reversing award of statutory

6  damages where "the infringing activity commenced before the

7  effective registration date of the copyright at issue.").

8       Instead, Zynga seeks partial summary judgment of entitlement

9  to statutory damages and attorneys' fees based on its later

10 registration of FarmVille's publicly visible software code as a

11 published work of text.  However, if the FarmVille HTML software is

12 merely a part of the FarmVille computer program, then there is a

13 question concerning the validity of this later copyright

14 registration.

15      According to Zynga's CTO for FarmVille, Zynga's games,

16 including FarmVille, consist "of multiple, inter-connected

17 components of code that function together, some components of which

18 are maintained privately on Zynga's servers, while other parts of

19 the code are publicly visible to interested Internet users."

20 Rajlich Decl. ¶ 3.  This statement suggests that the publicly

21 visible part of the code for FarmVille is part of the code

22 registered as an unpublished work on August 6, 2009.  Rajlich

23 testified that he believes that all of the code that is covered by

24 the later registration of the FarmVille HTML software is included

25 in the FarmVille code that was earlier registered as an unpublished

26 work.  Rajlich Dep. at 73:4-22.  If the FarmVille HTML software is

27 merely part of the FarmVille computer program, and if the earlier

28 registration of the computer program is not eligible for an award

**United States District Court**
For the Northern District of California

1    of statutory damages and attorneys' fees, then the later

2    registration of the Farmville HTML software may not be eligible for

3    such an award either.

4         The regulations and decisions of the Copyright Office call

5    into question whether the publicly visible parts of a computer

6    program can be separately registered.  37 C.F.R. § 202.3(b)(4)

7    provides that "all copyrightable elements that are otherwise

8    recognizable as self-contained works" that are included in a single

9    unit of publication or combined in a single unpublished

10   "collection" are considered "a single work."  37 C.F.R. §

11   202.3(b)(11) provides that "[a]s a general rule only one copyright

12   registration can be made for the same version of a particular

13   work."

14        In the context of considering whether computer screen displays

15   and the code generating those displays should be considered a

16   single work, the Copyright Office noted that "all copyrightable

17   expression owned by the same claimant and embodied in a computer

18   program . . . is considered a single work and should be registered

19   on a single application form."  53 Fed. Reg. 21,817, 21,817, 1988

20   WL 260355 (June 10, 1988).  The Copyright Office expressly voiced

21   the concern that departing from the rule of "one registration per

22   work" might result in "multiple claims for statutory damages, based

23   on separate registration."  Id. at 21,819.  That concern applies

24   here where Zynga could not seek statutory damages based on its

25   registration of the FarmVille code as an unpublished work, but

26   seeks statutory damages based on its separate registration of the

27   FarmVille HTML software as a published work.

28        In response, Zynga points to 17 U.S.C. § 408(e) which provides

**United States District Court**
For the Northern District of California

1    that "[r]egistration for the first published edition of a work

2    previously registered in unpublished form may be made even though

3    the work as published is substantially the same as the unpublished

4    version."  Zynga also points to the regulation providing that

5    "[w]here a work has been registered as unpublished, another

6    registration may be made for the first published edition of the

7    work, even if it does not represent a new version."  37 C.F.R. §

8    203.3(b)(11)(i).  However, here, there is evidence to suggest that

9    the FarmVille HTML software is merely the publicly viewable part of

10   the code that was already registered as an unpublished work four

11   days earlier.  Hence, by registering the FarmVille HTML software

12   shortly after it registered the FarmVille computer program, it is

13   not clear that Zynga sought to register the first published edition

14   of what was previously registered as an unpublished work.  Indeed,

15   it is undisputed that the FarmVille computer code as a whole has

16   never been published.  Because there is a question of fact as to

17   whether the FarmVille HTML software is merely a part of the

18   Farmville computer program, and because the Court questions the

19   validity of Zynga's separate registration of the FarmVille HTML

20   software, the Court DENIES Zynga's request for partial summary

21   judgment of entitlement to statutory damages and attorneys' fees.

22

23   **V.    CONCLUSION**

24        For the reasons stated above, the Court DENIES Zynga's Motion

25   for Partial Summary Judgment, DENIES Zynga's Motion to Strike, and

26   DENIES Green Patch's Rule 56(f) Motion.  A status conference has

27   been scheduled for November 10, 2010, at 10:00 a.m. in Courtroom 1,

28   on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San

Francisco, CA 94102.  The Court notes that Zynga has filed a motion
for leave to file a Second Amended Complaint.  ECF No. 184.  To
date, Green Patch has not opposed the motion.  If Green Patch
opposes it, the parties should be prepared to argue the issue at
the November 10, 2010 status conference.  The pretrial conference
in this case has been scheduled for November 19, 2010, and trial is
scheduled to begin on December 6, 2010.


      IT IS SO ORDERED.


      Dated:  November 8, 2010



                                    UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

15